## IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF OHIO WESTERN DIVISION

| | | |
|---|---|---|
| In re | ) | **Chapter 11** |
| | ) | **Case No. 14-**_____ |
| **ODOM  INDUSTRIES, INC.,** | ) | |
| | ) | **Honorable** _____ |
| **Debtor.** | ) | |

### EMERGENCY MOTION FOR ENTRY OF AGREED INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 364; (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. § 361, 362, 363 AND 364; AND (V) SCHEDULING FINAL HEARING ON THE DEBTOR'S MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS PURSUANT TO BANKRUPTCY RULE 4001 ("MOTION TO APPROVE DIP FINANCING AND USE OF CASH COLLATERAL")

The above-captioned debtor and debtor-in-possession (the "**Debtor**"), hereby moves this Court (the "**Motion**") for entry of the attached Agreed Interim Order and, subject to final approval, an Agreed Final Order in substantially the form attached hereto as Exhibit A (the "**Agreed Interim Order**" and, subject to final approval, the "**Agreed Final Order**"):[1]

(i)     Authorizing the Debtor to obtain post-petition financing pursuant to sections 105, 362, 363 and 364 of title 11 of the United States Code (the "**Bankruptcy Code**") in accordance with the Agreed Interim Order, the Agreed Final Order, and that certain revolving credit facility up to the aggregate principal amount of $552,000.00 (the "**DIP Facility**") from Hason USA Corp. (the "**DIP Lender**");

(ii)    Granting first priority, valid, perfected and enforceable liens (as defined in Section 101(37) of the Bankruptcy Code), to be shared *pari passu* with Fifth Third (as defined below) as necessary to prevent erosion of Fifth Third's security interest in the Collateral (as defined below), specifically excluding any and all causes of action under chapter 5 of the Bankruptcy Code, pursuant to section 364(c)(2) of the Bankruptcy Code (the "**Shared Lien**");

---

[1] The facts and circumstances supporting this Motion are set forth in the Declaration of Timothy C. Odom, CEO and Sole Shareholder of the Debtor, in Support of First Day Motions (the "**First Day Declaration**") filed contemporaneously herewith.

(iii)  Granting junior priority, valid, perfected and enforceable liens and superpriority claims to the DIP Lender against all assets, property and proceeds thereof, specifically excluding any and all causes of action under chapter 5 of the Bankruptcy Code, of the Debtor that are subject to prior, valid, perfected and enforceable liens, pursuant to section 364(c)(3) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code (the "**Second Liens**," together with the Shared Lien, the "**DIP Liens**");

(iv)  Granting superpriority claims to the DIP Lender against all of the Debtor's unencumbered assets, property and proceeds thereof as provided in section 364(c)(1) of the Bankruptcy Code (the "**DIP Superpriority Claims**");

(v)  Approving (A) the terms and conditions of, and authorization of the Debtor-in-Possession Credit Agreement between the Debtor and the DIP Lender (the "**DIP Credit Agreement**"), a copy of which is attached to the Agreed Interim Order as <u>Exhibit A</u>, (B) authorization of the other applicable DIP Financing Documents, and (C) the performance of such other acts as required by the DIP Credit Agreement and the other applicable DIP Financing Documents;

(vi)  Authorizing the Debtor to use "Cash Collateral," as the term is defined in section 363(a) of the Bankruptcy Code, of the Debtor's prepetition lender, Fifth Third Bank, Inc. ("**Fifth Third**");

(vii)  Granting of adequate protection to Fifth Third for use of the Cash Collateral;

(viii)  Modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and enforce the terms and provisions of the DIP Credit Agreement, the Agreed Interim Order, and the Agreed Final Order, and to permit the DIP Lender or Fifth Third to exercise their respective remedies on the Debtor's assets;

(ix)  Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), holding an interim hearing (the "**Interim Hearing**") on the Motion to consider entry of the Agreed Interim Order, authorizing the Debtor to borrow, on an interim basis, up to the aggregate amount of $480,000.00 under the DIP Facility, and authorizing the Debtor to utilize such portion of the total proceeds made available to the Debtor as is consistent with the Agreed Interim Order, the 13-week budget (the "**Initial Approved Budget**"), a copy of which is attached to the Agreed Interim Order as <u>Exhibit A</u>;

(x)  Scheduling a final hearing (the "**Final Hearing**") to consider entry of the Agreed Final Order authorizing the Debtor to borrow, on a final basis, amounts required under the Interim Approved Budget and any subsequent budget submitted to and approved by the DIP Lender and Fifth Third (collectively, the

"**Approved Budget**," and together with the DIP Credit Agreement, the Agreed Interim Order, the Agreed Final Order and all other agreements, documents, notes or instruments delivered in connection with the DIP Facility, the "**DIP Financing Documents**") up to the aggregate amount of $552,000.00 under the DIP Facility, and authorizing the Debtor to utilize such portion of the total proceeds made available to the Debtor as is consistent with the Agreed Interim Order, the Agreed Final Order, the Approved Budget and the DIP Credit Agreement; and

(xi)     Granting such further and related relief as the Court deems just and equitable.

## CONCISE STATEMENT OF RELIEF REQUESTED AND SUMMARY OF TERMS OF PROPOSED DIP FACILITY DOCUMENTS AS REQUIRED PURSUANT TO BANKRUPTCY RULE 4001(C)(1)(B)

1.     Pursuant to Bankruptcy Rule 4001(c)(1)(B), the Debtor sets forth herein a concise statement of the requested relief and a summary of the key terms of the proposed DIP Facility Documents and the locations within the relevant documents of certain material provisions of same:[2]

| Term | Summary | Provision in Relevant Document(s) |
|---|---|---|
| Debtor / Borrower | Odom Industries, Inc. | Agreed Interim Order: Introductory Paragraph subsection (a)<br><br>DIP Credit Agreement: Opening Paragraph and § 2.01 |

[2]  In the event of an inconsistency between the summary of key terms and the DIP Credit Agreement, the DIP Credit Agreement shall govern.  Capitalized terms used in this summary shall have the meanings ascribed to them in the Agreed Interim Order or the DIP Credit Agreement, as applicable.

| Term | Summary | Provision in Relevant Document(s) |
|---|---|---|
| DIP Lender | Hason USA Corp. | Agreed Interim Order: Introductory Paragraph subsection (a)<br><br>DIP Credit Agreement: Opening Paragraph and § 2.01 |
| Prepetition Lender | Fifth Third Bank | Agreed Interim Order: Introduction Paragraph subsection (d) and ¶ F(1)<br><br>DIP Credit Agreement: § 1.01 |
| Borrowing Limit and Availability | The Debtor is authorized to borrow funds up to the aggregate principal amount of $552,000.00 under the DIP Facility from the DIP Lender, with the Debtor authorized to borrow funds up to $480,000.00 under the DIP Facility on an interim basis; provided that the total amount of DIP Facility proceeds used by the Debtor on an interim basis through and including the date of the Agreed Final Order shall be consistent with the Approved Budget.. | Agreed Interim Order: Introductory Paragraph subsection (a), Introductory Paragraph (g) and ¶ 7<br><br>DIP Credit Agreement: § 2.01 |
| Events of Default | In addition to the Events of Default set forth in Article 6 of the DIP Credit Agreement, the following events shall constitute events of default under this Agreed Interim Order (collectively, the "**Events of Default**"): (a) failure of the Debtor to make any payments required by the DIP Financing Documents or this Agreed Interim Order, including the Adequate Protection payments to Fifth Third; (b) failure of the Debtor to provide the DIP Lender and Prepetition Lender with a draft budget and Approved Budget as set forth in Section 8 of the DIP Credit Agreement; (c) making any disbursements in excess of a 10% variance from the Approved Budget without the prior written consent of the DIP Lender and Fifth Third; (d) failure of the Debtor to meet total income projections in excess of a 10% variance from those set forth in the Approved Budget within 20 days from the week | Agreed Interim Order: ¶ 19<br><br>DIP Credit Agreement: § 6.01 |

| Term | Summary | Provision in Relevant Document(s) |
|---|---|---|
| | end for which such income was to be received; (e) failure of the Debtor to file monthly operating reports as required by the U.S. Trustee; (f) the appointment of any chapter 11 or chapter 7 trustee or an examiner pursuant to section 1104 of the Bankruptcy Code; (g) the Debtor seeks to obtain a lien or claim that is senior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, or the Replacement Liens; or (h) the automatic stay is lifted to the detriment of the DIP Lender and Fifth Third's interests in the Collateral. | |
| Use of Proceeds | The Debtor shall use the proceeds of all loans and advances under the DIP Facility for the purpose of purchasing inventory and otherwise funding the operations of the Debtor's business during the Chapter 11 Case, including the funding of professional fees and other administrative expenses of the bankruptcy estate as set forth in the Initial Approved Budget and the Approved Budget.<br>The proceeds of the DIP Facility may not be used directly or indirectly by the Debtor or any Committee (if appointed) to (a) investigate, object, contest or raise any defense to the validity, perfection, priority, extent, amount or enforceability of the DIP Obligations (as defined in the Agreed Interim Order), the DIP Liens, the DIP Superpriority Claims (as defined in the Agreed Interim Order), or the DIP Financing Documents, (b) investigate, assert any claims, defenses or causes of action against the DIP Lender or its agents, affiliates, directors, officers, representatives, attorneys or advisors, (c) investigate or seek to modify any rights granted to the DIP Lender under the DIP Financing Documents, (d) pay any professional fees or expenses incurred by any professional in connection with the foregoing, (e) seek to obtain liens or claims that are senior to or *pari passu* with the DIP Liens or DIP Superpriority Claims (with the exception of the Replacement Liens (as defined below)), or (f) make any other payment not authorized by the DIP Financing Documents, the Initial Approved Budget and/or the Approved Budget.<br>The Debtor (i) shall not make cash disbursements in a manner that is inconsistent with the Approved Budget, and (ii) without limiting the foregoing, the Debtor shall not make cash disbursements in excess of a 10% variance from the Approved Budget. | Agreed Interim Order: ¶ 9 and 10<br><br>DIP Credit Agreement: § 2.04 and 5.02(l) |
| Use of Cash Collateral | The Debtor is authorized to use Cash Collateral through and including the date of the hearing on the Agreed Final Order, including to pay any required fees to the Bankruptcy Court and the statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c); provided that, among other things, the Debtor's use of Cash Collateral is limited to those line items set forth in the Initial Approved Budget and the Approved Budget, with any variance on actual-to-approved weekly disbursements not to exceed 10%, on a cumulative basis.<br><br>Cash Collateral may not be used to fund any professional or attorney fees or expenses in the Chapter 11 Case. | Agreed Interim Order: ¶ 1, 4 and Exhibit A |
| DIP Budget | The Debtor's Initial Approved Budget, which is a 13 week cash flow projection, is attached to the Agreed Interim Order as Exhibit A in form and substance satisfactory to the DIP Lender and Prepetition | Agreed Interim Order: ¶ N and 8 |

| Term | Summary | Provision in Relevant Document(s) |
|---|---|---|
| | Lender. | and Exhibit A |
| Termination/Maturity Date | All amounts owed with respect to the DIP Obligations under the DIP Credit Agreement shall become due and shall be indefeasibly paid in full in cash and satisfied in accordance with the DIP Financing Documents on the earlier to occur of August 17, 2014 or the date of an Event of Default.<br>Upon the Maturity Date, the unpaid principal of, and accrued interest on, the DIP Facility and all other DIP Obligations shall be immediately due and payable and the DIP Lender shall have all rights and remedies provided in this Agreed Interim Order, the other DIP Financing Documents, and applicable law. | Agreed Interim Order: ¶ 15 and 16<br><br>DIP Credit Agreement: § 2.01(c) |
| Interest Rate | The Debtor shall pay interest to the DIP Lender on the outstanding and unpaid principal amount of the DIP Facility at a rate per annum equal to 8%, which shall be calculated on the basis of a year of 360 days for actual number of days elapsed.<br>The Interest Rate, after maturity whether by demand, acceleration, maturity or otherwise, shall automatically increase to a per annum interest rate equal to two percent (2%) above the Interest Rate in effect on the date of such maturity and/or termination | Agreed Interim Order: Exhibit B<br><br>DIP Credit Agreement: § 2.01(b) and 2.06 |
| Expenses | The reasonable costs and expenses as may be incurred from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Credit Agreement and the other DIP Financing Documents, are authorized and shall be paid in accordance with the terms and conditions of the DIP Credit Agreement and the other DIP Financing Documents, as applicable. | Agreed Interim Order: ¶ 14<br><br>DIP Credit Agreement: § 8.03 |
| Liens/Security | As security for the DIP Obligations, the DIP Lender is granted the DIP Liens, which are valid, binding, enforceable, non-avoidable, and automatically perfected security interests in, liens and claims on, and rights of setoff against all Collateral as follows:<br>(a) Pursuant to Section 364(c)(2) of the Bankruptcy Code, the DIP Lender is hereby granted the Shared Lien. The Shared Lien are first priority valid, binding, enforceable, non-avoidable, and automatically and fully perfected security interests in and liens on all of the Debtor's postpetition Collateral including, all property, real or personal, tangible or intangible, of the Borrower, now owned or hereafter acquired or existing and wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, contracts, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, commercial tort claims, securities accounts, goods, instruments, investment property, letter-of-credit rights, payment intangibles, documents, vehicles, intellectual property, permits and authorizations, and any products, proceeds and supporting obligations of any of the foregoing, to be shared *pari passu* with Fifth Third as necessary to prevent any erosion to Fifth Third's security interest, which shall be subject and subordinate only to (1) any valid, binding, enforceable, non-avoidable, and perfected liens in existence on the Petition Date other than the Prepetition Liens, (2) any valid, binding, enforceable, non-avoidable liens that were perfected | Agreed Interim Order: ¶ 11 and 12<br><br>DIP Credit Agreement: § 7.01 and 7.02 |

| Term | Summary | Provision in Relevant Document(s) |
|------|---------|-----------------------------------|
| | subsequent to the Petition Date pursuant to Section 546(b) of the Bankruptcy Code, and (3) the Carve-Out; <br> (b) Pursuant to Section 364(c)(3) of the Bankruptcy Code, the DIP Lender is hereby granted the Second Liens. The Second Liens are second priority, valid, binding, enforceable, non-avoidable, and automatically and fully perfected security interests in and liens on all of the Collateral, including, all property, real or personal, tangible or intangible, of the Debtor, now owned or hereafter acquired or existing and wherever located, including, without limitation, all inventory, accounts receivable, general intangibles, contracts, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, commercial tort claims, securities accounts, goods, instruments, investment property, letter-of-credit rights, payment intangibles, documents, vehicles, intellectual property, permits and authorizations, and any products, proceeds and supporting obligations of any of the foregoing, that was subject to a valid, binding, enforceable, non-avoidable, and perfected lien in existence on the Petition Date or any valid, binding, enforceable, non-avoidable lien that was perfected subsequent to the Petition Date pursuant to Section 546(b) of the Bankruptcy Code, which shall be subject and subordinate only to (1) any valid, binding, enforceable, non-avoidable, and perfected liens in existence on the Petition Date other than the Prepetition Liens, (2) any valid, binding, enforceable, non-avoidable liens that were perfected subsequent to the Petition Date pursuant to Section 546(b) of the Bankruptcy Code, and (3) the Carve-Out. <br> In addition, and subject to the Carve-Out, the DIP Lender shall be given the DIP Superpriority Claims with priority over any and all administrative expenses and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Section 503(b) and 507(b) of the Bankruptcy Code. The DIP Superpriority Claims shall not be superior to Fifth Third's Replacement Liens and Carve-Out. | |
| Granting of liens on claims or causes of action arising under Sections 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | The DIP Liens specifically do not extend or attach to claims or causes of action vested in Debtor pursuant to Sections 544, 545, 547, 548, and 549 (and, to the extent applicable for remedies, 550) of the Bankruptcy Code relating to monetary payments or transfers made during the applicable statutory period. | Agreed Interim Order: ¶ 12 |
| Adequate Protection on Prepetition Claims | As adequate protection for the Debtor's use of Cash Collateral, Fifth Third is granted the following: <br> (a) Replacement Liens. Fifth Third shall receive first priority replacement liens upon and security interests in all of the Debtor's Collateral, which liens upon the Debtor's postpetition Collateral shall be shared *pari passu* with the DIP Lender and shall be granted to Fifth Third only to the extent necessary to prevent any erosion in Fifth Third's security interest; Prepetition Lender is also granted a second priority lien in all of the Debtor's Collateral to the extend | Agreed Interim Order: ¶ 2 |

| Term | Summary | Provision in Relevant Document(s) |
|---|---|---|
| | the DIP Liens are of senior priority (collectively , the "**Replacement Liens**"). (b)  Payments.   The Debtor shall pay Fifth Third its monthly principal and interest payments pursuant to the terms of the Prepetition Loan Documents and in accordance with the Initial Approved Budget and the Approved Budget. (c)  Operating Account(s) Maintenance.  The Debtor shall open and maintain all of its operating accounts at and/or with Fifth Third. | |
| Carve-Out | The Interim Financing Order provides for a "**Carve-Out**."  The Carve-Out shall mean that the DIP Liens and the DIP Superpriority Claim shall be junior to:  (i) the payment of fees pursuant to 28 U.S.C. § 1930, (ii) the payment of allowed and unpaid professional fees and disbursements incurred by the Debtor and any Committee appointed in the Chapter 11 Case as set forth in the Approved Budget so long as there is no Event of Default, and (iii) in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP Loan Documents), the payment of allowed and unpaid professional fees and disbursements incurred by the Debtor and any Committee appointed in the Chapter 11 Case after the date of such Default or Event of Default (and regardless of when such fees and expenses become allowed by order of the Bankruptcy Court), in an aggregate amount not in excess of $10,000 (plus, all unpaid professional fees and disbursements incurred prior to the occurrence of such Default or Event of Default (and regardless of when such fees and expenses are allowed) to the extent (A) such fees and expenses do not exceed the amounts budgeted therefor on the Approved Budget for the period prior to such Default or Event of Default and (B) such fees and expenses have been or are subsequently allowed by the Bankruptcy Court.  Nothing herein shall constitute a waiver by the DIP Lender or the Pre-Petition Lender to object to the fees and expenses of any professional retained by the Debtor or a Committee, all such rights being fully reserved. | Agreed Interim Order: ¶ 18 |
| 506(c) Waiver | Debtor waives all rights to seek any section 506(c) of the Bankruptcy Code surcharge on Prepetition Lender's or DIP Lender's prepetition and postpetition Collateral. | Agreed Interim Order: ¶ 17 |
| Wavier of modification of the automatic stay | Provisions of the automatic stay, as set forth in section 362 of the Bankruptcy Code, shall be modified to the extent necessary (i) to implement and enforce the terms and provisions of the DIP Credit Agreement, the Agreed Interim Order, and the Agreed Final Order, and (ii) to permit the DIP Lender or Fifth Third to exercise their respective remedies on the Debtor's assets following the Events of Default and the Notice Period. | Agreed Interim Order: Introductory Paragraph subsection (f) and ¶ 20 |
| Indemnity | The Debtor shall hold harmless the Lender and its Affiliates, officers, directors, employees, attorneys, agents and representatives (each, an "**Indemnified Person**") from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses that | DIP Credit Agreement:  § 8.04 |

| Term | Summary | Provision in Relevant Document(s) |
|---|---|---|
|  | may be instituted or asserted against, or incurred by, any such Indemnified Person as the result of credit having been extended, suspended or terminated under the DIP Credit Agreement or the DIP Financing Documents and the administration of such credit, and in connection with or arising out of the transactions contemplated hereunder and thereunder and any actions or failures to act in connection therewith, including any and all environmental liabilities, and legal costs and expenses arising out of or incurred in connection with disputes between or among any parties to any of the Loan Documents (collectively, "Indemnified Liabilities"); provided, that Borrower shall not be liable for any indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability or expense results from that Indemnified Person's gross negligence or willful misconduct or the gross negligence or willful misconduct of such Indemnified Person's Affiliates, officers, directors, employees, attorneys, agents or representatives, in each case as finally determined by a court of competent jurisdiction after the exhaustion or expiration of available appeals. |  |
| The validity, enforceability, priority or amount of prepetition claim | The Debtor and the DIP Lender acknowledge and agree to the amount, validity, enforceability, priority and non-avoidability of the claims and liens in respect of Fifth Third. | Agreed Interim Order: ¶ F |
| Release, waiver or limitation on claims or other causes of action belonging to the estate or the trustee | For sixty (60) days following the formation of the any official committee of unsecured creditors (the "Committee"), or for 75 days following the entry of this Agreed Interim Order if no Committee is formed (the "Investigation Period"), the United States Trustee, the Committee (if appointed), or any party in interest with standing if no Committee is appointed, shall be entitled to investigate the validity, perfection, enforceability and extent of the Prepetition Indebtedness and Prepetition Liens and any potential claims of the Debtor against Fifth Third resulting from the Prepetition Indebtedness.  If no action is filed within the Investigation Period, then the Committee, and other claim holders and parties in interest are barred from bringing any action against Fifth Third on account of the Prepetition Indebtedness | Agreed Interim Order: ¶ 5 |
| Waiver or modification of applicable non-bankruptcy law relating to the perfection of a lien on property, on the foreclosure or other enforcement of the lien | Whether or not Fifth Third shall chose to file any financing statements or notices of lien to confirm the perfection of the Replacement Liens, which Fifth Third is authorized to do, the Replacement Liens shall be deemed valid, perfected, allowed, enforceable, and non-avoidable on the date of entry of this Agreed Interim Order.<br>Whether or not the DIP Lender shall choose to file any financing statements or notices of lien to confirm the perfection of the DIP Liens, which the DIP Lender is authorized to do, the DIP Liens shall be deemed valid, perfected, allowed, enforceable, and non-avoidable on the date of entry of this Agreed Interim Order. | Agreed Interim Order: ¶ 3 and 13<br><br>DIP Credit Agreement: § 7.04 |

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and
1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of
this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363,
and 364(c), (d)(1) and (e) of the Bankruptcy Code, Rules 2002, 4001, 9013 of the Bankruptcy
Rules, and Local Bankruptcy Rules ("**LBR**") 4001-2, 4001-3, 9013-1, and 9013-3.

## BACKGROUND

4.      The Debtor commenced the above-captioned case (the "**Chapter 11 Case**") by
filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 5, 2014
(the "**Petition Date**").  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the
Debtor is operating its business and managing its affairs as debtor-in-possession.  As of the date
hereof, no creditors' committee, trustee or examiner has been appointed in this Chapter 11 Case.

5.      The Debtor is an Ohio corporation that provides and creates parts and equipment
for industries such as, among others, steel, petrochemical, food processing, structural fabricating,
construction and mining, and employs a team comprised of numerous highly trained employees
that are able to meet the diverse needs of customers in these varying industries.  The Debtor's
business operations focus on designing and fabricating services, which enable the Debtor to
create metal structures, such as, among others, pressure vessels, tanks, stacks, drums, domes,
headers, columns and generators.  These services allow the Debtor to provide customers with
both standard industry designs and creations and extensive custom fabricating for forming a wide
variety of structural shapes.  In addition, the Debtor provides a variety of refractory lining, post-
welding heat treatment and internal/external coating services, which allows for the Debtor's

customers to receive a broad range of services that extend beyond the development, creation and fabrication of metal products.

6.     Over the past several years, dating back to 2007, at various times, the Debtor has experienced a series of customer delays, "short pay" customers, vendor failures, financial obligation defaults, accreditation losses and below average sales projections and figures.  Given these realities, and in particular the bleak sales projections, the Debtor has determined that it will not have sufficient cash flow requirements and/or liquidity going forward to meet its existing financial obligations and current and future customer needs.

7 .     These challenges have caused the Debtor to market its business for sale.  As a result of marketing efforts, the Debtor has found the DIP Lender, who is willing to serve as a stalking horse bidder in a sale of substantially all of the Debtors' assets under Section 363 of the Bankruptcy Code and to provide the DIP Facility to the Debtor so that the Debtor can continue to operate through this Chapter 11 Case and the closing of a sale of the Debtor's business.  On June 5, 2014, the Debtor entered into a binding asset purchase agreement (the "**APA**") with the DIP Lender for the purchase of substantially all of the Debtors' assets for $2,000,000 plus the assumption of certain liabilities.   The APA requires the Debtors, among other things, to commence this Chapter 11 Case.

## PREPETITION CAPITAL STRUCTURE

8.     Fifth Third Obligations.  On June 30, 2010, the Debtor executed and delivered to Fifth Third a Term Note in the original principal amount of $1,810,290.62, as was amended and modified from time to time, which consolidated (i) a Term Note dated December 14, 2006 in the original principal amount of $1,000,000 and (ii) a Revolving Note dated May 25, 2007 in the original principal amount of $1,100,000 (collectively, the "**Notes**").  On December 14, 2006, to secure the Notes, the Debtor and Fifth Third entered into a Security Agreement (the "**Security**

**Agreement**") pursuant to which the Debtor granted Fifth Third a security interest in substantially all of the assets of the Debtor, including, but not limited to, accounts, equipment, inventory, general intangibles, investment property, instruments, chattel paper, documents, cash, letters of credit, promissory notes, warrants, dividends, distributions, and contracts (collectively, the "**Collateral**").  In addition, the Notes were further secured by a Continuing Guaranty Agreement of Timothy C. Odom dated as of December 14, 2006, a Continuing Guaranty Agreement of Joseph T. Lukens dated as of December 14, 2006, and Odom Real Estate, LLC dated as of December 14, 2006[3] (collectively, the "**Guarantees**," collectively with the Notes and the Security Agreement, the "**Prepetition Loan Documents**").  As of the Petition Date, the Debtor was indebted to Fifth Third in the aggregate principal amount of $811,693.54, including principal, interest, late fees, other fees and credit card debt (the "**Fifth Third Indebtedness**").  True and exact copies of the Notes, the Security Agreement, the Guarantees, and any other related documents are collectively attached to the Motion as Exhibit B.[4]

9.    The Secured Equipment Lease Obligations.  In addition to the Fifth Third Indebtedness, the Debtor is indebted under several secured loans and capital leases for specific equipment and vehicles used in the Debtor's business (the "Secured Equipment Lease Indebtedness").  Based on the Debtor's books and records, the Secured Equipment Lease Indebtedness totals approximately $695,000.  Pursuant to the Agreed Interim Order, the DIP Liens (defined below) specifically do **not** attach or prime the security interests and liens related

---

[3] Odom Real Estate, LLC is a single member Ohio limited liability company owned by Timothy C. Odom.  Odom Real Estate owns the real estate upon which the Debtor operates.

[4] Debtor and Fifth Third entered into their first Forbearance Agreement on December 13, 2007.  That Forbearance Agreement has been extended 10 times.  The Tenth Extension of Forbearance Agreement is dated January 31, 2014 and extended the maturity date for the Fifth Third Indebtedness to September 20, 2014.  The Debtor has not had access to the any revolving loan facility from Fifth Third since June 30, 2010.  Since that time, the Debtor has been

to the Secured Equipment Lease Indebtedness.

## **REQUESTED RELIEF**

10.    As noted above, the Debtor seeks entry of an Agreed Interim Order substantially

in the form attached hereto as Exhibit A:

(i)    Authorizing the Debtor to obtain post-petition financing pursuant to sections 105, 362, 363 and 364 of the Bankruptcy Code in accordance with the Agreed Interim Order, the Agreed Final Order, and the DIP Facility from the DIP Lender;

(ii)    Granting first priority, valid, perfected and enforceable liens (as defined in Section 101(37) of the Bankruptcy Code), to be shared *pari passu* with Fifth Third (as defined below) as necessary to prevent erosion of the Pre-Petition Lender's security interest in the Collateral (as defined below), specifically excluding any and all causes of action under chapter 5 of the Bankruptcy Code, pursuant to section 364(c)(2) of the Bankruptcy Code (the "**Shared Lien**");

(iii)    Granting junior priority, valid, perfected and enforceable liens and superpriority claims to the DIP Lender against all assets, property and proceeds thereof, specifically excluding any and all causes of action under chapter 5 of the Bankruptcy Code, of the Debtor that are subject to prior, valid, perfected and enforceable liens, pursuant to section 364(c)(3) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code (the "**Second Liens**," together with the Shared Lien, the "**DIP Liens**");

(iv)    Granting superpriority claims to the DIP Lender against all of the Debtor's unencumbered assets, property and proceeds thereof as provided in section 364(c)(1) of the Bankruptcy Code (the "**DIP Superpriority Claims**")

(v)    Approving (A) the terms and conditions of, and authorization of the DIP Credit Agreement, a copy of which is attached to the Agreed Interim Order as Exhibit A, and (B) the performance of such other acts as required by the DIP Credit Agreement;

(vi)    Authorizing the Debtor to use Cash Collateral of Fifth Third;

(vii)    Granting of adequate protection to Fifth Third for use of Cash Collateral;

(viii)    Modifying the automatic stay under section 362 of the Bankruptcy Code to the extent necessary to implement and enforce the terms and provisions of the DIP Credit Agreement, the Agreed Interim Order, and the Agreed Final Order, and to

---

operating through cash collections and has significantly paid down the Fifth Third debt.  The Debtor believes Fifth Third is oversecured.

permit the DIP Lender or Fifth Third to exercise their respective remedies on the Debtor's assets;

(ix)    Pursuant to Rule 4001 of the Bankruptcy Rules, holding the Interim Hearing on the Motion to consider entry of the Agreed Interim Order, authorizing the Debtor to borrow, on an interim basis, upon the to the aggregate amount of $480,000.00 under the DIP Facility, and authorizing the Debtor to utilize such portion of the total proceeds made available to the Debtor as is consistent with the Agreed Interim Order, the Initial Approved Budget, a copy of which is attached to the Agreed Interim Order as <u>Exhibit B</u>, and the DIP Credit Agreement

(x)     Scheduling the Final Hearing to consider entry of the Agreed Final Order authorizing the Debtor to borrow, on a final basis, amounts required under the Interim Approved Budget and the Approved Budget, up to the aggregate amount of $552,000.00 under the DIP Facility, and authorizing the Debtor to utilize such portion of the total proceeds made available to the Debtor as is consistent with the Agreed Interim Order, the Agreed Final Order, the Approved Budget and the DIP Credit Agreement; and

(xi)    Granting such further and related relief as the Court deems just and equitable.

## <u>THE POSTPETITION CREDIT AGREEMENT</u>

11.    The Debtor has determined that, under the current circumstances, the postpetition financing proposal made by the DIP Lenders most clearly satisfies the Debtor's urgent financing needs.  The Debtor engaged in extensive arm's length negotiations, in good faith, with the DIP Lender and Fifth Third, culminating in the DIP Facility.

12.    The Debtor, Fifth Third and the DIP Lender engaged in lengthy negotiations over the terms of the Interim and Agreed Final Orders and the DIP Facility.  Those negotiations were extensive, comprehensive, at arm's length and in good faith.  The Debtor used its best efforts to negotiate the elimination, or narrowing of those provisions implicating issues that are the subject of Bankruptcy Rule 4001(c)(l)(B), LBR 4001-2, and LBR 4001-3.  Nevertheless, there remain provisions in the Agreed Interim Order and the DIP Facility Documents that are required to be highlighted by those Rules (the "**<u>Highlighted Provisions</u>**").  The DIP Lender has requested Court approval of the Highlighted Provisions as a condition for

providing the financing under the DIP Facility.  Based upon the totality of the circumstances, the Debtor submits that such protections are appropriate and in the best interest of the creditors of the estate.  Moreover, the Highlighted Provisions are by no means uncommon to debtor-in-possession financing of the nature that is before the Court in the current economic climate. Attached hereto as Exhibit C, is LBR Form 4001-2, relating to the Highlighted Provisions.

13.    The Debtor submits that the Highlighted Provisions are (i) appropriate because of the Debtor's inability to obtain postpetition financing on equal or better terms and (ii) feasible in light of the facts and circumstances of this Chapter 11 Case.  In conjunction with the Notes and the Security Agreement, the Debtor's assets are completely encumbered by liens in favor of Fifth Third under the Notes and Security Agreement.  The Debtor has been in forbearance with Fifth Third since 2007.  Fifth Third swept the Debtor's operating bank account in May, 2014 due to the Debtor's dire financial condition and receipt by Fifth Third of a notice of levy from the IRS.  The Debtor has approximately 10 collection lawsuits pending against it by trade creditors. The Debtor has had a significant liquidity crisis for several months.  In fact, the Debtor has had very little access to cash over the last several weeks.  As a result, there is no lender that will provide financing to the Debtor conduct a sale process except for the DIP Lender.  The DIP Lender therefore, when considering the restructuring as a whole, offered the Debtor the only terms upon which to obtain postpetition financing.  Without such financing, the Debtor will be unable to operate on a postpetition basis and will be unable to consummate a sale with the DIP Lender or other successful bidder at an auction.  The Debtor therefore believes that the terms of the DIP Facility are fair and justified under the circumstances.

**DEBTORS' ATTEMPTS TO OBTAIN CREDIT**

14.    As set forth above, the Debtor has been in loan workout with Fifth Third since 2007 and has not had access to a revolving line of credit since 2010.  The Debtor has had a

-15-

significant liquidity crisis for several months.  The only potential sources of funding to conduct

a bankruptcy sale process is Fifth Third or the DIP Lender (who is also the stalking horse for

acquisition of substantially all of the Debtor's assets).  The Debtor requested that Fifth Third

provide the DIP financing to allow the bankruptcy sale process to occur.  Fifth Third declined

but, after significant negotiations with the DIP Lender, did consent to the limited use of its

Cash Collateral and the DIP Financing provided by the DIP Lender.  The DIP Lender is only

willing to provide financing on the terms set forth in the Agreed Interim Order and DIP Credit

Agreement.  The financing available under the DIP Facility will enable the Debtor, among

other things, to avoid the cessation of their operations, maintain the continuity of their

operations pending a sale of their assets, pay the administrative expenses related the chapter 11

case, and maximize the value of their businesses as a going concern and their related properties.

### APPROVAL OF THE DIP FACILITY IS WARRANTED UNDER THE CIRCUMSTANCES AND APPLICABLE LAW

**A.      Approval Pursuant to 11 U.S.C Section 364(c)**

15.      Pursuant to Section 364(c) of the Bankruptcy Code, a debtor may, in the exercise

of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured

credit and the borrowing is in the best interests of the estate.  In re Simasko Production, 47 B.R.

444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtors' best

business judgment indicated financing was necessary and reasonable for benefit of estate); In re

Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit,

courts "permit debtors-in-possession to exercise their basic business judgment consistent with

their fiduciary duties"); see also Collier on Bankruptcy, ¶ 364.05 (15th ed. rev.).  Section 364(c)

of the Bankruptcy Code provides in pertinent part:

(a)      If the trustee [or debtor in possession] is unable to obtain unsecured

credit allowable under Section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt:

(1)     with priority over any and all administrative expenses of the kind specified in Section 503(b) or 507(b) of this title;

(2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)     secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. Section 364(c).

16.     Courts have articulated a three-part test to determine whether a debtor in possession is entitled to financing under Section 364(c) of the Bankruptcy Code: (i) whether the debtor is unable to obtain unsecured credit under Section 364(b), i.e., by allowing a lender only an administrative claim; (ii) whether the credit transaction is necessary to preserve the assets of the estate; and (iii) whether the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.  See, e.g., In re Farmland Indus., Inc., 294 B.R. 855, 880 (Bankr. W.D. Mo. 2003); In re Aqua Assocs., 123 B.R. 192, 195-96 (Bankr. E.D. Pa, 1991); In re Ames Dep't Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); In re Crouse Group, Inc., 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987); In re Secured Storage Systems, No. 91-14262S, 1992 WL 109064, at *1 (Bankr. E.D. Pa. May 15, 1992).

## NEED FOR FINANCING

17.     Unless the Debtor is authorized to obtain the financing requested herein, the Debtor will not have sufficient available sources of working capital to operate their business in the ordinary course of business after the Petition Date and to consummate a sale with the DIP Lender or other buyer of its assets. The Debtor has had very limited access to cash

over the last several month, which has hindered its business operations. The Debtor's ability to maintain business relationships with vendors, suppliers, and customers, to pay their employees, and to otherwise fund their operations, is essential to the Debtor's continued viability and preservation and maintenance of the going concern value of the Debtor's business and vital to the consummation of a sale.

## NO MORE FAVORABLE ALTERNATIVE FINANCING IS AVAILABLE IN LIGHT OF THE DEBTORS' CURRENT FINANCIAL STATUS

18.      The Debtor is unable to obtain credit that is not both secured and entitled to superpriority administrative claim status from any other financing source and, in fact, have been unable to obtain credit on even a secured and superpriority administrative basis from any other source. As noted above, the Debtor's obligations under the Notes and Security Agreement are secured by substantially all of the Debtor's Collateral. Under these circumstances, and given the Debtor's current financial status, the Debtor had no choice but to negotiate with its only financing option, which is the stalking horse bidder for its assets. Thus, the Debtor can show "by a good faith effort that credit was not available without" the protections of Section 364(c) of the Bankruptcy Code. Snowshoe, 789 F.2d at 1088. Accordingly, the Debtor believes that the financing arrangement proposed under the DIP Facility represents the only available option.

## THE FINANCING IS FAIR AND REASONABLE

19.      The Debtor believes that the terms of the DIP Facility and Agreed Interim Order are fair, just, and reasonable under the circumstances, as ordinary and appropriate for secured financing to debtors in possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Facility and the Agreed Interim Order have been negotiated in good faith and at arms' length by and among the Debtor, Fifth Third and

the DIP Lender, with all parties represented by counsel and financial advisors.  Accordingly, the Debtor believes that any credit extended under the terms of the DIP Facility and the Agreed Interim Order is extended in good faith by the DIP Lender as that term is used in Section 364(e) of the Bankruptcy Code.

20.    Given the Debtor's current financial status, the Debtor is unable to obtain credit that is not secured with lien.  Accordingly, after appropriate investigation and analysis, the Debtor has concluded that the DIP Facility is the best alternative available under the circumstances.  Bankruptcy Courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not this Court"); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("More exacting scrutiny would slow the administration of the Debtors' estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estates, and threaten the court's ability to control a case impartially."); Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

21.    In the instant case, the Debtors have exercised sound business judgment by seeking advice from its legal and financial advisors in making the determination that the DIP Facility is fair and reasonable and in the best interest of the Debtors' estates. Accordingly, the Debtors should be granted authority under Section 364(c) of the Bankruptcy Code to enter into the DIP Facility and borrow funds from the DIP Lenders on the basis described herein and in the DIP Facility, on a senior secured super-priority basis.

**FAR REACHING NEGATIVE EFFECT OF FAILURE TO OBTAIN APPROVAL OF DIP FACILITY**

22.     The Debtor's inability to utilize the funds made available pursuant to the DIP Facility will immediately cause the cessation of its operations and result in a disastrous ripple effect that will have far reaching negative ramifications.  Such negative consequences include but are not limited to: (i) a complete shut down of the Debtor's manufacturing operations and (ii) the dismissal of the Debtor's approximately 30 employees.  The effect of such events is the value of the Debtor's assets as a going concern will plummet overnight.  Accordingly, the only way to protect the value of the Collateral, the Debtor's remaining assets, and the Debtor's estate, to the fullest extent possible, is for the Debtor to obtain the debtor in possession financing provided by the DIP Facility.

## A.     DIP Facility Negotiated in Good Faith

23.     The Debtor, in the exercise of their prudent business judgment and consistent with its fiduciary duties, have concluded that the terms of the DIP Facility is reasonable under the circumstances, competitive in today's marketplace, and address the Debtor's working capital and liquidity needs.  The terms of the DIP Facility were negotiated in good faith and at arms' length by all parties.  The negotiations lasted over several weeks. The Debtor was assisted in the negotiations by sophisticated and experienced financial advisors and counsel.  Based on the good faith efforts of the Debtor, Fifth Third and the DIP Lender in negotiating a financing arrangement that will benefit the Debtor, its estates and its creditors, the Debtor respectfully request that the DIP Lender receive the protections of Bankruptcy Code Section 364(e) with respect to the DIP Facility.

## AUTHORIZATION FOR THE USE OF CASH COLLATERAL IS WARRANTED UNDER THE CIRCUMSTANCES AND APPLICABLE LAW

**A.     Approval of Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code**

24.     Section 363(c)(2) of the Bankruptcy Code provides that the Debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2). Further, section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e); see also Federal Nat. Mortg. Ass'n v. Dacon Bolingbrook Associates Ltd. Partnership, 153 B.R. 204, 210-11 (N.D. Ill. 1993); Matter of Johnson, 47 B.R. 204, 208 (Bankr. W.D. Wis. 1985).  Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include the providing of an additional or replacement lien to the extent that the use of the property by a debtor will cause a decrease in the value of an entity's interest in the property.  11 U.S.C. § 361.

25.     The Debtor requests authorization to use the Cash Collateral to pay actual, necessary ordinary course operating expenses, as set forth in the Initial Approved Budget, attached to the Interim Financing Order as Exhibit A, which includes the costs and expenses associated with the continuation of the Debtor's fabrication operations and incorporates amounts to be advanced under the DIP Facility.

26.     The Debtor's need to use Cash Collateral is essential to this Chapter 11 Case because continued operations will maintain and maximize the value of the Debtor's assets during the pendency of this chapter 11 case for the benefit to all creditors herein and allow for an

orderly sale process.  Absent the use of the Cash Collateral, the Debtor will be unable to operate

its business, to meet all of its ongoing obligations, and to provide the necessary and expected

services that the Debtor's customers demand.  Approval of interim use of the Cash Collateral

thus is crucial, and without such use, the Debtor's operations, its creditors and other parties in

interest will suffer immediate and irreparable harm and its assets will markedly diminish in value

going forward.

**B.**     **Section 361 of the Bankruptcy Code – Adequate Protection**

27.     In consideration for the use of it's Cash Collateral, the Debtor will provide

Fifth Third with the following "adequate protection" which courts have found meet the

requirements of 11 U.S.C. § 361:

> (a)   Replacement Liens.  Fifth Third shall receive first priority replacement
> liens upon and security interests in all of the Debtor's Collateral, which
> liens upon the Debtor's postpetition Collateral shall be shared *pari passu*
> with the DIP Lender and shall be granted to Fifth Third only to the
> extent necessary to prevent any erosion in Fifth Third's security interest;
> Prepetition Lender is also granted a second priority lien in all of the
> Debtor's Collateral to the extend the DIP Liens are of senior priority
> (collectively , the "**Replacement Liens**").  These Replacement Liens
> shall be valid, binding, enforceable and fully perfected upon entry of the
> Agreed Interim Order.

> (b)   Payments.  The Debtor shall pay Fifth Third its monthly principal and
> interest payments pursuant to the terms of the Prepetition Loan
> Documents and in accordance with the Initial Approved Budget and the
> Approved Budget.

> (c)   Operating Account(s) Maintenance.   The Debtor shall open and
> maintain all of its operating accounts at and/or with Fifth Third.[5]

28.     What constitutes adequate protection is a question of fact that is to be

determined by the court on a case-by-case basis.  In re Rocco, 319 B.R. 411 (Bankr. W.D. Pa.

---

[5] Section 361 of the Bankruptcy Code specifically provides that periodic cash payments and replacement or
additional liens are forms of adequate protection.

2005).  It was the intent of Congress in Section 361 to give courts flexibility to fashion relief in light of each case in general equitable principals.  In re Wilson, 30 B.R. 371 (Bankr. E.D. Pa. 1983). As a result, courts have developed general principles to guide the adequate protection determination.  What constitutes adequate protection is determined on a case-by-case basis, and the equitable factors which the court might consider include: (1) whether the claim is over- or under-secured, (2) the parties reasonable expectations, (3) the quality of the collateral, (4) the length of the stay, (5) whether the lien value is stable, depreciating or appreciating, (6) whether taxes and other payments are being made on the collateral and (7) whether the debtor has a high or low chance of reorganization.  See In re Briggs Transp. Co., 780 F.2d 1339 (8th Cir. 1985).

29.    In this case, Fifth Third has consented to the use of its cash collateral in accordance with the Agreed Interim Order.  Fifth Third is oversecured and will be paid in full from the proceeds of the sale of substantially all of the Debtor's assets.  Fifth Third is receiving replacement liens and monthly payments of interest and principal in accordance with 11 U.S.C. § 361.

**C.    Interim Approval, Final Hearing and Notice**

30.    Pursuant to Bankruptcy Rule 4001(b), the Final Hearing on this emergency Motion to borrow funds under the DIP Facility may not be commenced earlier than fifteen days after the service of this Motion.  Upon request, however, the Bankruptcy Court is empowered to conduct a preliminary expedited hearing on this Motion and authorize the obtaining of credit necessary to avoid immediate and irreparable harm to the Debtors' estates. Fed. R. Bankr. Proc. 4001(b)(2).

31.    As noted above, it is critical to the success of this Chapter 11 Case that the Debtor be able to obtain debtor in possession financing   Based on the current status of the

Debtor's business, it is also critical that the Debtor be permitted to enter into such financing facilities and to draw funds thereunder sooner than the 15 days' notice required under Bankruptcy Rule 4001 for a final hearing on this Motion in order to operate its business and preserve value at this critical juncture.  The Debtor believes that it will suffer immediate and irreparable harm in the absence of an interim hearing and approval of interim borrowings under the DIP Facility.

32.     The Debtor requests that the Court (a) conduct an expedited hearing with respect to the Agreed Interim Order, and (b) schedule the Final Hearing on the Agreed Final Order at the earliest possible date in accordance with Bankruptcy Rule 4001(b), but in no event later than twenty-five (25) days from entry of the proposed Agreed Interim Order.

**D.     Waiver of Memorandum of Law**

33.     This Motion includes citations to the applicable authorities and a discussion of their application to this Motion.  Accordingly, the Debtor respectfully submits that such citations and discussion satisfy the requirement that the Debtor submit a separate memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule 9013-1.

## <u>NOTICE</u>

34.     No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.  The Debtor has provided, through overnight mail, postage prepaid, notice of this Motion to:  (i) the Office of the United States Trustee for the Southern District of Ohio; (ii) counsel to Fifth Third Bank, Inc.; (iii) counsel to Hason USA Corp.; (iv) creditors listed on the Debtor's list of twenty largest unsecured creditors; (v) creditors asserting a security interest in the assets of the Debtor to the extent reasonably known to the Debtor; (vi) all parties to equipment leases with the Debtor to the extent reasonably known to the Debtor; (vii) Milford

Tax Department; (viii) Clermont County Treasurer; (ix) Clermont County Auditor; (x) Ohio Department of Taxation; (xi) Ohio Commercial Activity Tax Division; (xii) Ohio Department of Job and Family Services; (xiii) Ohio Bureau of Workers' Compensation; (xiv) Department of Treasury, Internal Revenue Service; (xv) Kentucky Department of Revenue; (xvi) Indiana Department of Revenue; and (xvii) counsel to any party in pending litigation with the Debtor. In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances. **Please take notice that the Debtor has filed a Motion for an Expedited Hearing to consider First Day Motions and Applications, including the foregoing. The Debtor shall serve notice of the objection deadline and expedited hearing date pursuant to further order(s) of this Court.**

### NO PRIOR REQUEST

35. No prior motion for the relief requested herein has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully request that this Court enter the Order, substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtor to use Cash Collateral and obtain postpetition secured and superpriority financing on an interim basis as set forth in the Agreed Interim Order; (b) scheduling the Final Hearing; (c) approving the form and manner of notice of the Final Hearing; and (d) granting such other and further relief as this Court deems appropriate.

Dated:  June 5, 2014
Cincinnati, OH

Respectfully submitted,

**FROST BROWN TODD LLC**
By: */s/ Douglas L. Lutz*
　　Douglas L. Lutz, Esq. (0064761)

Paige L. Ellerman, Esq. (0071561)
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone:  (513) 651-6800
Facsimile:  (513) 651-6981
Email:     dlutz@fbtlaw.com
Email:     pellerman@fbtlaw.com

**PROPOSED ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

C:\Users\15257\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\9VVKSMIT\Odom Industries - DIP Financing
Motion - 4836-6750-5691 3.doc